Stephen M. Lobbin
sml@smlavvocati.com
SML AVVOCATI P.C.
969 Hilgard Avenue, Suite 1012
Los Angeles, California 90024
(949) 636-1391 (Phone)

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

SPEECH TRANSCRIPTION, LLC
            Plaintiff,

v.

WAZUH, INC,
            Defendant.

**Case No. 5:26-cv-02942**

**Jury Trial Demanded**

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Speech Transcription, LLC ("Plaintiff") files this Complaint against Wazuh, Inc. ("Defendant"), for infringement of United States Patent No. 8,938,799 (hereinafter "the '799 Patent"), and alleges as follows:

## PARTIES

1.      Plaintiff is a Wyoming limited liability company having an address at 1 East Broward Boulevard, Suite 700, Ft. Lauderdale, FL 33301.

2.      On information and belief, Defendant is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 1021 Lenor Way, San Jose, CA 95128.  On information and belief, Defendant may be served through its registered agent in the State of Delaware: Vcorp Services, LLC, 108 W. 13th Street, Suite 100, Wilmington, Delaware 19801.

## **JURISDICTION AND VENUE**

3.      This action arises under the patent laws of the United States, 35 U.S.C. § 271 et seq.  Plaintiff is seeking damages, as well as attorney fees and costs.

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338(a) (Patents).

5.      On information and belief, this Court has personal jurisdiction over Defendant because Defendant has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

6.      On information and belief, Defendant's instrumentalities that are alleged herein to infringe were and continue to be used, imported, offered for sale, and/or sold in this District.

7.      Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because, as noted above, it has maintained an established and regular place of business in this District and has committed acts of patent infringement in the District from that regular and established place of business.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

## **PATENT-IN-SUIT**

8.      Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent No. 8,938,799 (hereinafter "'799 Patent").  The '799 Patent is attached as Exhibit A.

ORIGINAL COMPLAINT

9.      The '799 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

10.     Plaintiff possesses all rights of recovery under the '799 Patent, including the exclusive right to recover for past, present and future infringement.

11.     The priority date of the '799 Patent is at least as early September 14, 2004. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

12.     Plaintiff alleges infringement on the part of Defendant of the '799 Patent.

13.     The '799 Patent relates generally to a unified security management system and related apparatus and methods for protecting endpoint computing systems and managing, providing, and obtaining security functions. *See* Abstract, '799 Patent. The endpoint devices may be of different forms such as desktop PC, laptop, a workstation, PDA, cell phone, smartphone, set-top box, et cetera. In one embodiment, a subsystem related to an endpoint is used to support a unified security management system, with the subsystem providing an open platform for repository of defense functions from any participating vendors' software modules.

14.     As noted, the claims of the '799 Patent have priority to at least September 14, 2004.  The deficiencies in the state of the art as of the Date of Invention were highly problematic. Attacks on computer systems have advanced in variety and sophistication. *See* '799 Patent at 1:30-31. Conventionally, the deployment of defense functions in enterprise networks can be network-based or host-based, or both. The host-based

deployment requires multiple defense function software modules to be installed in each host. The deployment of immunization functions is generally host-based and requires an agent to be installed in each host for each supported immunization function. Consequently, a deployed security infrastructure consisting of multiple defense and immunization functions may burden the host with multiple defense function software and a number of agents for supporting the corresponding immunization functions. This situation may create software conflict and registry corruption issues in the host and cause end-user productivity loss and unnecessary IT labor cost for testing and validation, which may be exacerbated as the software upgrade/patch incidences for security functions and operating system increase. It may also create issues such as performance degradation and security vulnerability where security functions may be disabled by malware or human carelessness. In addition, the aforementioned multiple defense and immunization functions are managed by multiple vendors' management systems. The resulting heterogeneous environment gives rise to duplicated processes and technical and management complexity, leading to high total-cost-of-ownership (TCO) and low return-on-investment (ROI). *See* '799 Patent at 3:49-67.

15.    In addition, the vast majorities of residential internet users generally do not have sufficient knowledge on computer security, and thus are unlikely to have adequate security protection. Another observation is that the user may experience disruptions that require retries and/or reboots during a security function download, and computer behavior changes after the download. Another observation is that it is

ORIGINAL COMPLAINT

generally costly to acquire an adequate number of defense and immunization functions. *Id*. at 4:38-46.

16. Further, one practical aspect of security for the residential user is the need to subscribe to and pay for multiple security services. Billing and user payments are largely handled via separate subscriptions, separate bills, and separate payment processes. Another observation is that numerous security vendors in the marketplace are available to provide various solutions to counter various security threats. These vendors desire exposure to potential markets. Users desire exposure to information about available security products that may be subscribed to or otherwise obtained. Despite the existence of information sources on the Internet and elsewhere, the necessary processes of identifying desirable vendors and products are inconvenient and often time consuming. *Id*. 4:50-63.

17. In addition, password management is integral to overall endpoint security, and is associated with many unmet needs, both for residential users and especially for enterprise endpoint users and IT managers. It is difficult for end users to remember numerous and periodically changing sets of passwords/user IDs, and so end users oftentimes choose not to conform to security policy or practice and instead, for example, write passwords/user IDs information down on a post-on or into a computer file. For end users who do conform to good security practice, may forget their passwords and/or user IDs, and they must typically call a helpdesk and request a password reset in order to re-enter applications, or they must via other means obtain a

ORIGINAL COMPLAINT

new password/user ID pair. This process reduces end user productivity and adds an extra load and cost to already burdened helpdesk. *See* '799 Patent at 4:66 – 5:13.

18.     The claims of the '799 Patent overcome these deficiencies existing in the art as of the date of invention, and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas.

19.     For example, the claims of the '799 Patent provide a unified security management system that: (1) may be used in various embodiments to form a unified management zone (UMZ) for managed endpoints. At the edge of the zone, controls from various security management systems from any combination of vendors may be terminated, interpreted, and translated into a set of predetermined formats for communicating with managed endpoints within the UMZ without direct access to the endpoints by vendors' security management systems; (2) may be configured in some embodiments to enable methods that implement network access control and identity management; (3) may be configured in some embodiments to enable mechanisms that unify and automate security subscriptions, and enable single-bill consolidated billing methods; and (4) may be configured in some embodiments to enable mechanisms that allow Internet service providers and IT service providers to offer managed security services for enterprise and residential end users. *See* '799 Patent at 4:28 – 6:18.

20.     The claims of the '799 Patent are not drawn to laws of nature, natural phenomena, or abstract ideas.  The specific combinations of elements, as recited in the

ORIGINAL COMPLAINT

claims, was not conventional or routine at the time of the invention.

21.   Further, the claims of the '799 Patent contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

22.   Consequently, the claims of the '799 Patent recites systems and methods resulting in improved functionality of the claimed systems and represent technological improvements to the operation of computers.

23.   The '799 Patent was examined by Primary United States Patent Examiner Aravind Moorthy.  During the examination of the '799 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G06F 211604 (2013.01); G06F 21/564 (2013.01); G06F 21/577 (2013.01); G06F 21/56 (2013.01); G06F 21/64 (2013.01); H04L 63/1416 (2013.01); H04L 63/1408 (2013.01); H04L 63/1441 (2013.01); G06F 21/57 (2013.01).

24.   After conducting a search for prior art during the examination of the '799 Patent, the United States Patent Examiner identified and cited US 7,058,796 as the most relevant prior art reference.

25.   After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '799 Patent to issue.  In so doing, it is presumed that Examiner Moorthy used his knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs.,*

*LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Moorthy had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002). Further, it is presumed that Examiner Moorthy determined that the claims of the '799 Patent were eligible under 35 U.S.C. § 101. In view of the foregoing, the claims of the '799 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the '799 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Moorthy. Further, the claims of the '799 Patent are directed to patent-eligible subject matter.

26.    The claims of the '799 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

27.    The nominal expiration date for the claims of the '799 Patent is no earlier than June 7, 2033.

## ACCUSED INSTRUMENTALITIES

28.    On information and belief, Defendant sells, advertises, offers for sale, uses, or otherwise provides exemplary products, including at least the Wazuh Extended Protection and Response (XDR) platform, that functions as a single management platform providing security functions such as intrusion detection, malware detection, file integrity monitoring, configuration assessment, vulnerability detection, and support for regulatory compliance to protect the endpoints by incorporating open source intelligence (OSINT) sources such as SURICATA, VIRUS TOTAL, Abuse IPDB, and YARA-CI provided by third-party security solutions. The foregoing are collective referred to as the "Accused Instrumentalities."

## COUNT I
## (INFRINGEMENT OF UNITED STATES PATENT NO. 8,938,799)

29.    Plaintiff refers to and incorporates the allegations in Paragraphs 1 - 28, the same as if set forth herein.

30.    This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq*.

31.    Defendant has knowledge of its infringement of the '799 Patent, at least as of the service of the present complaint.

32.    The '799 Patent is valid, enforceable, and was duly issued in full

compliance with Title 35 of the United States Code.

33.     Upon information and belief, Defendant has infringed and continues to infringe one or more claims, including at least Claim 14, of the '799 Patent by manufacturing, using, importing, selling, offering for sale, and/or providing (as identified in the Claim Chart attached hereto as Exhibit B) the Accused Instrumentalities which infringe at least Claim 14 of the '799 Patent. Defendant has infringed and continues to infringe the '799 patent either directly or through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271.

34.     Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, at least Claim 14 of the '799 Patent, by having its employees internally test and use these exemplary Accused Instrumentalities.

35.     The service of this Complaint, in conjunction with the attached claim chart and references cited, constitutes actual knowledge of infringement as alleged here.

36.     Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the '799 Patent. On information and belief, Defendant has also continued to sell the exemplary Accused Instrumentalities and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '799 Patent. *See* Exhibit B (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).

37. At least since being served by this Complaint and corresponding claim chart, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '799 Patent, literally or by the doctrine of equivalents, by selling exemplary Accused Instrumentalities to their customers for use in end-user products in a manner that infringes one or more claims of the '799 Patent.

38. Exhibit B includes at least one chart comparing the exemplary '799 Patent Claims to the exemplary Accused Instrumentalities. As set forth in this chart, the exemplary Accused Instrumentalities practice the technology claimed by the '799 Patent. Accordingly, the exemplary Accused Instrumentalities incorporated in this chart satisfy all elements of at least Claim 14 of the '799 Patent.

39. Plaintiff therefore incorporates by reference in its allegations herein the claim chart of Exhibit B.

40. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

41. Defendant's actions complained of herein will continue unless Defendant is enjoined by this court.

42. Defendant's actions complained of herein are causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendant is enjoined and restrained by this Court.

43. Plaintiff is in compliance with 35 U.S.C. § 287.

ORIGINAL COMPLAINT

## DEMAND FOR JURY TRIAL

44.    Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to:

(a)    Enter judgment for Plaintiff on this Complaint on all causes of action asserted herein;

(b)    Enter an Order enjoining Defendant, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Defendant who receive notice of the order from further infringement of United States Patent No. 8,938,799 (or, in the alternative, awarding Plaintiff running royalties from the time of judgment going forward);

(c)    Award Plaintiff damages resulting from Defendant's infringement in accordance with 35 U.S.C. § 284;

(d)    Award Plaintiff pre-judgment and post-judgment interest and costs; and

(e)    Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.

Dated: April 6, 2026

Respectfully submitted,

*/s/ Stephen M. Lobbin*

Stephen M. Lobbin
sml@smlavvocati.com
**SML AVVOCATI P.C.**
969 Hilgard Avenue, Suite 1012
Los Angeles, California 90024
Phone: (949) 636-1391

**Counsel for Plaintiff**

ORIGINAL COMPLAINT